We'll hear argument next in Sky Technologies v. SAP, Appeal 1606 from 2008. Good morning, your honor. Chief Judge Michel, other members of the panel, may it please the court, my name is Paul Grewal and I represent the appellants SAP AG and SAP America, Inc. This morning I would like to focus my remarks on three particular subjects raised by this interlocutory appeal. First, why Akazawa affirmed the longstanding requirement of both Congress and the Supreme Court that all transfers of patent title to assigns under Title 35 be in writing. Second, why the operation of Massachusetts law… But normally when we talk about a requirement of writing we mean as opposed to orally. But I don't understand there to be any issue in here about an oral conveyance or alleged conveyance. There may be an issue about whether the writings constituted assignment, but the writings were definitely writings. Your honor, there were definitely writings which Sky points to in support of its argument that it satisfied the requirements of Section 261, but there is very much a dispute as to whether any of those writings manifested by their language a present intent to pass title to the assigned. The third issue, your honor, I'd like to address, if time permitting, is why the garden variety Article 9 security interests that are among those writings that are appointed to by the appellees in this case do not meet the requirements for written assignment under Section 261 of the Patent Act. Well, there aren't any requirements in 261 other than the word writing. It can't be oral, it has to be in writing, but 261 says nothing else at all that I can recall that's required. Your honor, 261 is explicit that an assignment that is a transfer of title to an assigned be by instrument in writing. I'll agree completely that it is a sparse assignment. So it has one requirement, must be in writing, and it doesn't have any other requirement. That's correct, your honor, but it is that requirement which is at the heart of this dispute and which formed the basis for the district court's error. That's why I'm having problems. There is a convenience. I may be getting ahead of where you were, but since we started in on you, let me continue. There are certain, obviously we know from Akizawa that there's at least one category of transfers that would not be deemed to be within the in writing requirement of the assignment rule. I can think of a couple, maybe certainly one other, say a forfeiture. If there's a forfeiture of property, then presumably that wouldn't be subject to the writing requirement. It could happen by operation of law. I think you'd agree with that. Your honor, I would agree very much that Akizawa recognized at least one exception. So I think there are other exceptions as well, right? Well, Congress can certainly make exceptions. Let's stay with state law. I mean, state law could say, for example, forfeiture of property occurs under the following circumstances, and what's more, the party that obtains the title to the property, right? And that would be the end of it. There wouldn't be any writing requirement under 261. You'd agree with that, right? I don't think so, your honor, in light of AGR as well as under, at least if we're talking about Massachusetts state law, the Barton case, which we discussed. I haven't gotten there yet, but I'm actually focused on the forfeiture first. I want to try to see if we have common ground on that. Well, again, your honor, I'm not aware of the specific issue of forfeiture being addressed, but the Supreme Court in AGR did address the general issue of whether, for example, an appointee of a receiver under state bankruptcy law would have the title to a patent, the requirements of Section 261 notwithstanding, or at least the written requirement that was in effect at the time of AGR. And in that particular case, the Supreme Court, like the Massachusetts Supreme Court in the Wilson case, which followed in Barton, agreed that that general appointment under state law is insufficient to vest title. There has to be a particular written assignment that is an instrument in writing under Section 261 in order to accomplish that. Well, AGR was just a judgment creditor situation, right? It wasn't a secured interest. There was no secured interest in AGR, your honor, because, of course, the UCC had not been enacted. Well, but they certainly had secured interests back then. This just wasn't one of them. All that happened, as far as I could tell from the facts of AGR, were somebody had a cause of action, won his case, there was a judgment, and went out to execute the judgment and wanted to execute on the patent. And the court said, not so fast. Well, I think in AGR, actually, there was not only a judgment but a decree issued, as well as a writ of fear of action. Right, right. But that's the way you'd execute on a judgment in those days. That's right. But in that particular instance, your honor, even where there was a judgment of a court applying state law, recall that the Supreme Court of the District of Columbia was applying the statutes of Maryland of 1787 at the time. Even in that instance, as in the instance where you have a receiver appointed under state law, title may not transfer to an assigned absent or writer. It's a very clear, and I will agree with the Chief Judge, a sparse requirement, but it's a requirement nonetheless, and for very important reasons. This is not a technicality of any kind. There are very important policy reasons that this court and the Supreme Court is recognized behind the Section 261 requirement. I would, for example, direct the court to its discussion of this issue in the Enzo case, where Enzo describes the certainty requirements behind Section 261, the need to provide members of the public, potentially interested parties, with certainty as to who has title, so that we don't have the type of revisionist history that was a problem in that particular case and, frankly, a problem in this case. We have the CMS case, which we also cite, which makes that same point, that it is important to provide the public with adequate notice that, in fact, title has transferred to the assigned. Well, I know that you quarrel with the opposing side on the issue of what exactly Massachusetts law provides, but let's assume for the moment that Massachusetts law does not require any kind of confirmatory writing in order for pure legal title to pass, setting aside such things as my car title, piece of paper, which I need in order to persuade somebody that I actually own, things like that. But if it is true that the typical rule in, say, Massachusetts is that after the forfeiture sale occurs, that the purchaser at a forfeiture sale has full legal title, why shouldn't that be sufficient to satisfy any concerns there might be with the imponderables, the lack of clarity, just as the laws of intestacy would solve those problems if a state recognizes the passage of legal title, as in Akazawa? I think there are two points to consider here, Your Honor. I think we're finally at Barton, which we discussed just a minute ago. And in Barton, I would encourage members of the panel to go back and review that case. In Barton, the Supreme Judicial Court of Massachusetts looked at a provision of the state legislature, an act of the state legislature in Massachusetts, and noted and, in fact, affirmed that it understood that the intent of the legislature was to vest title in the receiver under the appointment under Massachusetts law. That intent notwithstanding, Barton said that you had to go out and get a written instrument in order to transfer title to the assigned. And the reason was Congress, the federal Congress, has imposed a sparse but very specific requirement compelling a written assignment. So I think Barton rejects the notion that the Massachusetts legislature and frankly any other state legislature  Are you saying that 261 implicitly regulates all transfers of title, not just assignments, but every possible mode of transferring title? Your Honor, I'm saying that it regulates, to use your phrase, all transfers of title to assigns. And I distinguish between assigns, which are identified in Section 154A of Title 35, from heirs. And I make that distinction because that's the exact distinction that this Court made in Akazawa. So unless we are talking about an heir under 154A or a patentee, the two other categories of putative title holders, we are talking about an assign. Whoa, whoa, whoa, don't go so fast. That's what I'm not so clear on. It certainly would be a literal reading of 261 to say where you're talking about an attempt to assign, it has to be in writing or it's automatically defective. But it's not clear to me that by requiring assignments to be in writing, the Congress was also requiring all other transfers of title to likewise be in writing. Your Honor, I think if Akazawa isn't enough to resolve that issue, I believe it to be the case that it is, that that issue is resolved in Akazawa. I would direct your attention to the Arachnid case, for example, which I believe was a 1991 case of this Court, in which this Court discussed the three separate classes of putative title holders and specifically relied upon Supreme Court precedent in the Crown Dye case. Supreme Court, going all the way back to Crown Dye, which Arachnid discusses at some length, made very clear that there are under the Title 35 provisions three specific categories. And when you're talking about heirs, Akazawa provides the answer. States may, and I suppose under Akazawa even foreign governments may vest title in heirs if they so provide explicitly. But that's not the case with an assignment. I would just answer Judge Bryson's earlier question completely. There's an important reason to distinguish between a transfer of title to an assigned and a transfer of title to an heir. Of course, the purpose, the fundamental purpose this Court recognized in the Enzo case was certainty. That's the whole point of Section 261. And when you're talking about an heir, of course, unfortunately there is no way to understand what the decedent's present intent is with respect to parting the title. We're stuck. And so in that particular instance, it's appropriate to turn to state or foreign law which explicitly vests title. That is a recognition of this Court that heirs really do stand separate and apart from assigns. But if you're talking about assigns, in that particular instance, the requirement is not burdensome, to say the least. And Auger, the Supreme Court decision,  all recognize that in cases where you're dealing with a punitive transfer to an assigned, there has to be a writing. Not a complicated writing, not a formalistic writing, but a manifestation of a present intent to part with title. Now, what was it you referenced a moment ago that the basis for your saying that there are only three categories and that assignments essentially is everyone except the inventor and an heir. What was your source for that? My source for that is 35 U.S.C. 154A. 154A? Yes. As well as the discussion of that particular statute in Akazawa, I would also direct the Court to the Arachnid case from 1991, which we discuss at length in our brief. It cites to a Supreme Court precedent, Crown Die, which I believe was authored by Chief Justice Taft, which also discusses in the context of the provisions of the Patent Act and force at that time, the Patent Act of 1870, these three specific categories that must apply. And again, this is not a discretionary matter. Congress has spoken to this issue. Congress has made very clear that there is an important policy difference between a transfer of title to an assigned and a transfer of title to an heir. And, Your Honor, if I may turn to the issue of Massachusetts law for a moment. So, are you saying that Congress has to be viewed as having required all transfers to be by the method we call assignment except transfers to heirs? Unless Congress, for example, Your Honor, in the Film Tech case, which we discuss also in our brief, that there is an example in that particular case of a separate statute passed by the Federal Congress, which provided for a transfer of title to the government in the case of certain research done under a non-nuclear energy research act and program. So, Congress certainly has the authority itself to create other mechanisms by which title may pass without a writing to parties other than heirs. But in the case of a state legislature or a state court, there are numerous cases that we've cited to from Massachusetts but also from other states and from federal courts which made clear that there has to be an instrument in writing. And, Your Honor, if I may turn to the Massachusetts issue. But there has to be... Well, go ahead. You're going to there. Well, I was just going to turn, Your Honor, to the question of whether under Massachusetts law title in fact vested in the cross-Atlantic secure creditor following the foreclosure. But, of course, that was the conclusion of the district court in this case. And the district court relied upon provisions 610 and 617 of Article 9 under the Massachusetts implementation of the UCC. Your Honor, if one studies those provisions very carefully as well as the underlying provisions in the agreement itself, the two agreements themselves that we're talking about, you'll see there's no discussion of title transfer whatsoever. And, in fact, Massachusetts is explicit in Section 619 that title passes or may pass following foreclosure not as a result of the foreclosure. If there were any doubt about Massachusetts' own interpretation of its laws, you could look further to Section 202 of Article 9 which we also discussed in our brief where Massachusetts explicitly disclaims any particular title theory when it passes the Uniform Commercial Code. So Massachusetts, for its part, is not only disclaiming any particular title theory. If you look at both 202 and the commentary to Section 202 as well as 619 under the Massachusetts UCC, you'll see Massachusetts instructing parties not to rely upon Massachusetts' UCC law in order to resolve questions of title. In this particular case where you have a federal statute with an explicit requirement for a writing, there cannot be any disagreement that a writing is required. I see that I'm into my rebuttal time, Your Honor. We'll restore your rebuttal time. Let's hear now from Ms. White. Thank you, Your Honor. Thank you, Your Honor. May it please the Court. I represent Sky Technologies and I think it's important to begin by clarifying the nature of this dispute. As the appeal has been framed by SAP, it is a request for what would be a new and a broad rule of federal preemption. That is because the transfers that SAP is challenging were done in strict compliance with the terms of the Uniform Commercial Code as it has been adopted in Massachusetts. And the UCC adopted in Massachusetts Article 9-617 states with crystal clarity that a secured creditor's disposition after default transfers to a transferee for value all of the debtor's rights in the collateral. This was a valid state law property transfer at the moment that Cross Atlantic repurchased Osro's assets at public auction. But SAP does want a ruling that Osro is nonetheless who was the debtor in this case is nonetheless still the patent owner because it says 50 states UCC law notwithstanding a written security agreement properly enforced in accordance with the UCC is ineffective to transfer ownership to a secured creditor by virtue of one sentence from the Federal Patent Act. Do you think that what happened here the foreclosure sale constitutes an assignment as that term is used in Title 35? We think that Judge Folsom correctly analyzed this law as outside the realm of assignment which is spoken of in Section 261. But we think that regardless of whether this Court views this case as falling within the Akazawa decision as being a non-assignment that security interests are something different a different animal or whether this Court views the case as falling within Section 261 is immaterial here because we have no less than four written documents in this case each of which lists these patents with crystal clarity and explain the secured creditor's rights upon default and those agreements they are the term sheet the two security agreements which were consolidated with Cross-Atlantic and then another written settlement agreement How does the term sheet go? I understand that the term sheet is not binding on anybody it's just a paper used to start the negotiations How does that go? The law in Massachusetts and we would submit this is a fact issue that needs to be resolved by the District Court before any court can rule that Osrow is the patent owner but the law in Massachusetts on that is a term sheet is binding if all of the material terms are set forth in the agreement irrespective of whether the parties contemplated some further documentation. Language in a term sheet contemplating further documentation is but one factor to consider when determining the parties intent. The critical question that a Massachusetts court would look at to determine whether this term sheet is a valid binding contract in and of itself is did the parties intend to be bound and on that the only evidence in the record whatsoever is before the court in the joint appendix we have the affidavits from Glenn Riger of Cross-Atlantic and Jeffrey Conklin of Osrow both stating that they viewed this as an agreement between Cross-Atlantic, Osrow, and Osrow Conklin's new company NUCO effective on the date that the agreement was signed there is no contrary evidence of intent and it's also significant What does the term sheet add by way of terms to the other document? It really doesn't I don't understand why you lead off by talking about the Let me be clear I think what is evidenced in the four written documents in this case is a series of transactions that where the parties were really attempting to belt and suspenders this all of the agreements are in writing and they're all consistent with one another Which of the four documents do you think most clearly purports to transfer title to these patents? I believe that the security agreements themselves are evidence are probably the best evidence of an assignment if one is required by section 261 of the patent act. Now SAP has said that there must be a writing post default. If that is required then the term sheet and the settlement agreement are the best written evidence of that. But if I could I'd like to turn to the security agreements themselves The security agreements were entered into between Osborne and Cross Atlantic and state that they list all of the patents they were filed with both the PTO and in accordance with the UCC and they state that upon default upon the event and occurrence and continuance of an event of default Cross Atlantic has all of the rights and remedies of a secured creditor under the uniform commercial code. Those are explicitly incorporated into the agreement. Well, I don't understand what that kind of language means. It sounds like it's just saying what the law already is in some statute. That doesn't create any new or different rights. That's just like saying the U.S. code exists. Well yeah, sure, but that doesn't create any special new agreement between Judge Bryson and me that we've negotiated and one of our terms in our signed agreement says the U.S. code exists. And the agreements go on to specifically delineate what those rights are. Cross Atlantic can take sell, possess dispose of that property at a public or private sale it lists the requirements so there can be no dispute should the UCC be amended in the future about what the parties had agreed to do at the time of this agreement. I'm not so sure I agree with you. It looks to me like that language can be read as what the drafters assumed the law would be and how it would apply in a certain circumstance in the future. That isn't necessarily the same as I hereby convey to you, William Bryson my car. And there's a good reason why these parties wouldn't have wanted to I hereby convey to you my car upon an event of default because Osro had a right under the Uniform Commercial Code to demand that Cross Atlantic sell its property at a public auction. That auction was advertised to the public in the Philadelphia Inquirer and the Global Edition of the Wall Street Journal had a third party come to that auction and bid on these patents for more than the $4,031,844 that Osro owed Cross Atlantic then Osro was entitled to the remainder. So there is a good state law reason that a debtor will want to enter into an agreement like this when a secured creditor performs in accordance with the agreement that agreement which incorporates the state Uniform Commercial Code including 9-617 which says that secured creditor's exercise of its post-default remedies and disposition entitles it to all of the there is a good reason for this court not to hold that such agreements are ineffective. The same reasoning that this court used in the Akazawa decision applies here because notably the court recognized in the Akazawa decision that because of Japanese intestacy law requiring a writing at the time it would have been required would actually have been to require a nullity because of the Massachusetts Uniform Commercial Code and specifically 9-617 which says that at the moment of repurchase Cross Atlantic has all of the rights of the debtor. It would have been a nullity to require what SAP would have this court hold here which is a post-foreclosure writing conveying the patents to Cross Atlantic. I don't understand the opposing counsel to insist on any particular timing of the writing. I understood him to insist that the writing amount to a conveyance by its terms. And this writing does amount to a conveyance by its terms Your Honor. The security agreements themselves but and I'll allow a conditional conveyance. The problem is that if I convey to Chief Judge Michelle my bicycle in the event that I should injure myself while riding it. The question is have I assigned my bicycle? Probably not. I've made an agreement to assign the bicycle maybe a promise to assign the bicycle but as I understand our cases I probably haven't assigned the bicycle, don't you think? I would disagree, Your Honor. Keep in mind our cases dealing with agreements to assign. Take that as the fabric that we're engaged in trying to construe here. Understood, Your Honor. And I think what's significant about those cases is that in each case where this Court has held there is actually an agreement to assign something in the future there is language in the agreement contemplating a future further written document. We have no such language in this agreement. Rather what our agreement says and it sets forth the conditions is that when Cross-Atlantic performs in accordance with those conditions it is entitled to all of the rights and remedies of a secured creditor under Massachusetts law. There is no language in the security agreements that says and after such exercise we will execute a written assignment transferring the documents. We do have assignment language in the security agreements. It's at section 9 of the security agreements and it refers to in the context of discussing perhaps reinvesting Osro with the secured property should Osro satisfy its obligations under the agreements. It says it talks about reinvesting Osro with the collateral assigned here under. That is the only assignment language that we have in these agreements and it talks about the patents being assigned here under to Cross-Atlantic. It is in the nature of a conditional assignment and I would submit that this court's case law is distinguishable because in those cases there was... What about section 8? Doesn't section 8 talk about an exclusive license being conveyed under certain circumstances but if I've already been assigned the patent I don't need an exclusive license. I could give somebody else an exclusive license but I don't need one myself I'm the outright owner of the title. That's correct your honor and that right is cumulative of the other rights. You'll see it on page 176 of the joint appendix it says that Cross-Atlantic shall be given an exclusive royalty free license to use the intellectual property. Basically use the invention itself. Which right shall be cumulative to and not exclusive of any of the other rights and remedies which are set forth in the agreement. So that is a right in addition to and not a right exclusive of the rights that Cross-Atlantic was given to dispose of the property upon default. I'm having a little difficulty in trying to sort out the alternative arguments here because on the one hand you're saying that the security instrument created in fact effected an assignment, conditional assignment but an assignment nonetheless which is section 261. On the other hand you say if that's not right then what happened at the moment of the forfeiture sale was a transfer by operation of law which was not an assignment and therefore is not subject to the writing requirement of 261. Right? I'm not sure that those arguments are as mutually exclusive as you've put them. They feel somewhat in tension. Correct. Let me say this. This court's jurisprudence has recognized what it calls an operation of law transfer where there is a written agreement and where there is not a written agreement. The latter case would be the Akazawa decision. The former, where there is a written agreement are the DDB Technologies case, the Film Tech case, the Speedplay vs. Bebop case, all of which involved what is in the nature of a conditional assignment. So I'm not sure that the term operation of law excludes there being some written agreement. Let me be clear. We do not believe that a written assignment is necessary in the context of a security interest. We believe that Judge Folsom correctly analyzed the law on that point. But if a written assignment is required and Chief Judge Michelle correctly recognized that that is a very limited just written instrument requirement in Section 261, then our position is that the security agreements or the term sheet or the settlement agreement any one of those would satisfy that very limited federal requirement. And there is certainly no occasion on these facts to hold that Article 9-617, which transferred to Cross Atlantic all of the debtor's rights and the collateral is preempted, rendered ineffective, null and void by virtue of one phrase from the Federal Patent Act. I would like to address one argument that was raised by SAP and it regards Section 154, which this Court will know describes merely how to title a patent. It does not purport to delineate every who can own a patent nor did Akazawa address, and it certainly would have been dictated in the context of the decision had it done so, but it did not purport to address the exhaustive category of persons who could hold ownership rights in a patent. The decisions which come the closest to... Well, we don't have any argument here that the purported transferee is ineligible to own a patent. I understand the argument to be there was no valid transfer. It has nothing to do with the status of the alleged transferee. It's the failure of the transfer instrument according to the other side. And I believe, and I want to make sure I'm understanding the argument you're referencing, I believe SAP's position has been that the transfer was somehow invalid under Massachusetts law because of the failure to execute a transfer statement, which is what's mentioned in 9-619 of the Uniform Commercial Code. And as Judge Bryson, I believe, alluded to, the transfer statement is widely recognized under the Uniform Commercial Code to be merely a public records tool. It is a method to facilitate recording either in some public registry the fact that ownership has changed. Your argument about 154, I take it, is a response to the contention that that statute, in effect, serves as a definitional provision saying that there are only three categories of patent owners. Correct, Your Honor. And I think even a passing reading... And you say no, that that's not intended to be definitional or restricted. Correct, Your Honor. I think even a passing reading of that section reveals that it really doesn't address or purport to address the categories of persons who can own a patent. With my remaining time, I would like to emphasize, however, that if there is any doubt about the effectiveness of the newly discovered term sheet, which was produced by a third party after the briefing was originally completed before the district court, that is an issue which should be sent to the district court on remand. We think it is unnecessary in this case because Judge Folsom correctly analyzed the law. But if this court is inclined to reverse Judge Folsom on the legal issue, we believe that a remand is necessary so that Judge Folsom can address the factual disputes regarding this term sheet, including the arguments that SAP has raised in its brief about authority and effectiveness and intent of the parties, all of which would be in line with the law. All right. Thank you. Mr. Gray, we'll have three minutes of rebuttal. Thank you, Your Honor. Just to start with the final point raised by counsel regarding the term sheet, as we pointed out in our gray brief, this term sheet was produced before Judge Folsom issued his opinion before this court today. It was produced by a third party which is represented by the same counsel representing Sky. And so under Federal Rule Appellate Procedure 10, that document is not properly part of the record before this court and should not be considered by this court as part of this appeal. Judge Bryson, I want to go back to the tension you identified between the various positions Sky has presented as to when title actually passed from Osro to Cross Atlantic. In the red brief at page 10, Sky takes an absolutely unequivocal position that title passed upon event of default. And of course, Judge Folsom rejected that conclusion and specifically held that title did not pass at default. It was his conclusion that title in fact passed at foreclosure. But default is very much the position that Sky presents in its red brief at page 10 and default is, according to Sky, the point at which title passed from Osro to Cross Atlantic. Now, the McDonald case from Massachusetts rejects this notion that default alone is adequate to pass title. In terms of Massachusetts law and what Massachusetts provides, it is clear that in section 9-617 of the UCC, Massachusetts law provides that a transferee takes certain rights that were previously owned by the debtor or properly of the debtor. But the distinction between debtor's rights and ownership and title is a very important and critical distinction. It's a distinction that this Court made, again, in the very first paragraph of the background section in the Arachne case. This Court recognized that ownership interests, excuse me, are not coextensive and not immediately tied to title. Those are distinct questions that must be asked. When you say title, are you talking about legal ownership versus equitable ownership? Is that really what you're saying, or are you saying something more formalistic with respect to title, a la my car title? I mean, I owned that car before I got a copy of that piece of paper from the State. Not only was I equitable owner, I was the legal owner. I didn't have a title yet from the State, but I was the legal owner. Agree? You didn't have legal title, Your Honor. I didn't? Until I had that piece of paper from the State? You had to have the piece of paper from the State in order to have legal title to the car. And if the piece of paper, I lost the piece of paper? I lost legal ownership of the car? You retained ownership, Your Honor, but title is separate. Well, then you're using the word title in a very formalistic way. You're not using it to mean legal ownership. I'm using it in exactly the same way that this Court used it in the Arachne case. In Arachne, this Court explained that legal title is a prerequisite to standing in order to bring a claim for patent infringement. But you're assuming that they were using it in a very formalistic way that you're using it. So that they would say, for example, that if you lose the piece of paper with the red ribbon around it, you no longer have ownership of the patent. That can't be. Well, it's not only this Court in Arachne, Your Honor, but it is Massachusetts itself which distinguishes between the debtor's rights and ownership claims and legal title. That's why if you look at Section 202 of the UCC in Massachusetts, Massachusetts disclaims and instructs parties not to rely upon the UCC in order to provide title. That distinction between title and ownership, Your Honor, is important. It's dispositive in this case. Because absent legal title, we are instructed by earlier opinions of this Court, there cannot be standing. Standing depends upon legal title. Legal title, if you're talking about a transfer to an assigned, depends upon a right, instrument in writing. And there is no instrument in writing which manifested intent on the part of ASRA to part with its title. There isn't one. And if you have any doubt about that, take a look at the security, I'm sorry, the settlement agreement that Cross Atlantic signed with Mr. Conklin prior to the foreclosure which took place in this case. In that settlement agreement, Cross Atlantic pledges to use best efforts to do what? To obtain title. Now why would Cross Atlantic have signed a settlement agreement with Mr. Conklin to obtain title that it already had? It couldn't have. It knew full well that it had to go out and secure title in order to proceed with the transaction with Mr. Conklin and the new company. So the final point I'll make, Your Honor, I think Chief Judge Michel, you raised this question of why there would be a license in the security agreement itself if title in fact had passed upon default. There of course would be no reason for that. And if you look at the particular provision providing for license in both of these security agreements, there are actually two of them, it provides that a non-exclusive or in the other case an exclusive license is provided simply for purposes of affecting rights and remedies under the UCC. With that, Your Honor, I'll rest. We thank both counsel. The appeal is submitted.